Cite as 2025 Ark. App. 56

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-24-352

| | |
|---|---|
| ARKANSAS DEPARTMENT OF ENVIRONMENTAL QUALITY; AND THE ARKANSAS INSURANCE DEPARTMENT, PUBLIC EMPLOYEE CLAIMS DIVISION<br><br>APPELLANTS<br><br>V.<br><br>RICHARD OLIVER<br><br>APPELLEE | Opinion Delivered February 5, 2025<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br><br>[NO. H204215]<br><br><br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

The Arkansas Department of Environmental Quality and the Arkansas Insurance Department, Public Employee Claims Division (ADEQ), appeal the Arkansas Workers' Compensation Commission's (the Commission's) decision awarding Richard Oliver additional medical treatment for a referral to Dr. Kenneth Rosenzweig for an impairment rating. We affirm.

Oliver was a maintenance technician at ADEQ. On May 31, 2022, Oliver sustained a back injury while moving furniture. ADEQ accepted the injury as compensable and provided medical benefits. Specifically, on June 1, Oliver saw a physician assistant at Healthcare Express. The physician assistant's notes state that Oliver could not take

nonsteroid anti-inflammatory medication due to a scheduled cardiac ablation and that Oliver declined an x-ray and physical therapy. The physician assistant additionally specified that she observed spasms of the paraspinal muscles of the lumbar spine.

On June 7, Oliver saw Dr. Michael Cassat, a family-medicine physician at an orthopedic clinic, to whom he reported back pain during the night after lifting heavy objects. Dr. Cassat gave him a fifteen-pound lifting restriction.

On July 28, Oliver had an MRI, and the MRI report provides as follows:

FINDINGS:

. . . .

L3-4: Mild diffuse disc bulge indenting the thecal sac without spinal canal stenosis. There is mild left neural foraminal narrowing.

L4-5: Mild diffuse disc bulge indenting the thecal sac without spinal canal stenosis. The disc contacts but does not displace the transiting left L5 nerve root in the lateral recess. There is mild neural foraminal narrowing. There is mild facet arthrosis.

L5-S1: Mild diffuse disc bulge indenting the thecal sac without spinal canal stenosis. A small left paracentral posterior annular fissure is noted without protrusion of disc material. There is no neural foraminal narrowing. There is mild facet arthrosis.

. . . .

IMPRESSION:
Mild lumbar spondylosis at the L3-4, L4-5 and L5-S1 levels without significant spinal canal stenosis or neural foraminal narrowing. Disc bulge at L4-5 contacts but does not displace the transiting left L5 nerve root in the lateral recess.

On August 8, Oliver returned to Dr. Cassat to review the MRI, and Dr. Cassat concluded that the MRI shows small disc herniations and considerable foraminal stenosis. He further noted that Oliver had fluid in his facets at multiple levels with some degenerative

2

change, and they discussed that "this could be indicative [of] some facet pathology." Dr. Cassat concluded that "[g]iven that [Oliver] had no significant symptoms before his injury, this is greater than 50% likely to be causative [of] his symptoms." Oliver asked to return to work without restrictions, and Dr. Cassat released him to full duty.[1]

On September 27, Oliver again saw Dr. Cassat. Oliver reported significant back pain but could not tolerate anti-inflammatory medication and could not stop taking anticoagulation medication. Dr. Cassat recommended no further treatment options for Oliver and found Oliver to be at maximum medical improvement with a zero percent impairment rating. Dr. Cassat additionally found that Oliver "can follow up with me as needed."

On December 5, Oliver obtained a change in physician to see Dr. Ali Raja, a neurosurgeon. On December 15, he saw Dr. Raja, and Dr. Raja did not recommend surgical intervention at that time. On May 9, 2023, Dr. Raja referred Oliver to Dr. Kenneth Rosenzweig, a pain-medicine specialist, for an impairment rating. However, ADEQ denied Oliver the referral.

On August 24, the case proceeded to hearing before an administrative law judge (ALJ), and Oliver was the only witness. He testified that he cannot touch his toes, put on his pants, or run. He stated that he walks up to two miles, but his walking results in pain. He

---

[1]The record indicates that ADEQ terminated Oliver's employment in August 2022.

also stated that he swims for exercise to maintain his weight. He explained that he has a heart condition and cannot undergo certain pain-management procedures.

On September 28, the ALJ issued an opinion finding that Oliver had established that the referral was reasonable and necessary medical treatment for his back injury. The ALJ acknowledged the MRI report and Dr. Cassat's zero percent impairment rating, but the ALJ found that the rating was inconsistent with Dr. Cassat's findings that Oliver had small disc herniations and that the work-related injury caused Oliver's symptoms. The ALJ thus concluded that Dr. Rosenzweig's evaluation was necessary to determine whether Dr. Cassat's rating assessment was appropriate. The ALJ additionally credited Oliver's testimony concerning his pain and physical problems.

ADEQ appealed the ALJ's opinion to the Commission. On March 21, 2024, the Commission affirmed and adopted the ALJ's decision. ADEQ appealed the Commission's decision to this court.

We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. *Parker v. Atl. Rsch. Corp.*, 87 Ark. App. 145, 189 S.W.3d 449 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The Commission has the duty to make determinations of credibility, to weigh the evidence, and to resolve conflicts in medical testimony and evidence. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008). If reasonable minds could reach the result found by the Commission, the appellate court must affirm. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858.

4

On appeal, ADEQ argues that the Commission erred by finding that Oliver established entitlement to additional medical treatment in the form of a referral to Dr. Rosenzweig. ADEQ points out that the referral's purpose is for Oliver to receive an impairment rating, and it argues that an impairment rating is not medical treatment. It further points out that Dr. Cassat already assessed Oliver at a zero percent impairment rating.[2]

Arkansas Code Annotated section 11-9-508(a) (Supp. 2023) provides that an employer must provide for an injured employee medical services reasonable and necessary in connection with the injury received by the employee. These services can include diagnosing the nature and extent of the compensable injury, reducing or alleviating symptoms resulting from the compensable injury, maintaining the level of healing achieved, or preventing further deterioration of the damage produced by the compensable injury. *Hazen Sch. Dist. v. Ingle*, 2024 Ark. App. 454, 699 S.W.3d 719. Medical treatment intended to reduce or enable an injured worker to cope with chronic pain attributable to a compensable injury may constitute reasonably necessary medical treatment. *S. Tire Mart, LLC*

---

[2]ADEQ also claims that Oliver is not entitled to see Dr. Rosenzweig because Oliver already used his one-time change of physician to Dr. Raja. To preserve an issue for appellate review in a workers'-compensation case, it is a party's responsibility to present the issue to the Commission and obtain a ruling. *N. Hills Surgery Ctr. v. Otis*, 2021 Ark. App. 468, 638 S.W.3d 323; *Ark. Dep't of Parks & Tourism v. Price*, 2016 Ark. App. 109, 483 S.W.3d 320. The Commission did not issue a finding concerning the change-in-physician rules. Accordingly, we decline to address this argument on appeal.

*v. Perez*, 2022 Ark. App. 179, 644 S.W.3d 439; *see also Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004).

It is the employee's burden to prove by a preponderance of the evidence that medical treatment is reasonable and necessary. *Goyne v. Crabtree Contracting Co.*, 2009 Ark. App. 200, 301 S.W.3d 16. What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of the medical evidence and to translate it into findings of fact. *Wise v. Vill. Inn*, 2015 Ark. App. 406, 467 S.W.3d 186.

In this case, we find no error by the Commission. Medical treatment includes diagnosing the nature and extent of the compensable injury as well as treatment to reduce or enable an injured worker to cope with chronic pain, and the referral at issue in this case is for an impairment rating from Dr. Rosenzweig. Even though Dr. Cassat assessed Oliver at a zero percent impairment rating, the Commission relied on Dr. Cassat's opinion that Oliver had disc herniations and that the work-related injury caused Oliver's symptoms. It concluded that Dr. Rosenzweig's assessment is necessary to address the discrepancy in Dr. Cassat's evaluation. The Commission further credited Oliver's testimony about his continued pain and physical problems. Resolving the conflicting medical evidence, making credibility determinations, and deciding what weight to give to particular pieces of evidence is within the Commission's province. *N. Hills Surgery Ctr.*, 2021 Ark. App. 468, 638 S.W.3d 323. We thus hold that the Commission's decision is supported by substantial evidence, and we affirm the Commission's decision to award Oliver additional medical treatment.

Affirmed.

GLADWIN and THYER, JJ., agree.

*Charles H. McLemore Jr.*, Public Employee Claims Division, for appellants.

*Mark Alan Peoples, PLC*, by: *Mark Alan Peoples*, for appellee.